755 F.2d 99
 Harold LAMPHER and Gerald Richmond, Plaintiffs-Appellees,
v.
James B. ZAGEL, individually and in his capacity as Director
of the Department of Law Enforcement, and Daniel D. Doyle,
individually and in his official capacity as State's
Attorney of Winnebago County, Defendants-Appellants.
 Nos. 84-1084, 84-1085.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 26, 1984.
Decided Feb. 14, 1985.
As Amended Feb. 15, 1985.
 
 Steven P. Zimmerman, Pedderson, Menzimer, Conde, & Stone, Rockford, Ill., for plaintiffs-appellees.
 William Wallin, Chicago, Ill., for defendants-appellants.
 Before CUMMINGS, Chief Judge and BAUER and POSNER, Circuit Judges.
 CUMMINGS, Chief Judge.
 
 
 1
 On May 27, 1981, plaintiff Lampher, the owner of a seized 1977 Chevrolet, filed this suit against James Zagel, Director of the Illinois Department of Law Enforcement, and Daniel Doyle, State's Attorney of Winnebago County, Illinois, hereinafter referred to as "defendants." In his complaint filed under Sections 1983 and 1985 of the Civil Rights Act (42 U.S.C. Secs. 1983 and 1985), plaintiff sought a declaration that Section 4-107(i) of Anti-theft article I of the Illinois Motor Vehicle Code (ILL.REV.STAT. ch. 95 1/2, p 4-107(i) (1983)) was unconstitutional. This was the statute under which his motor vehicle had been seized by Zagel's Department on April 29, 1981. Lampher also sought the return of his automobile, damages and attorney's fees. On June 11th Gerald Richmond petitioned the district court to join the suit as a co-plaintiff and requested similar relief growing out of Zagel's Department's seizure of Richmond's 1978 Ford pickup truck on June 5, 1981. Both seizures were effected under the foregoing provision of the Illinois Motor Vehicle Code because the manufacturers' identification numbers appeared to be altered. Both vehicles were returned to plaintiffs in October 1981.
 
 
 2
 On June 17, 1981, at the request of defendants, the district court abstained until a state court action pending in the Circuit Court of Winnebago County was terminated. That action was filed by defendant Doyle on June 16, 1981, in the name of the State of Illinois and sought an order to sell Lampher's and Richmond's vehicles under Section 4-107(i) of the Illinois Motor Vehicle Code. On June 18 Lampher petitioned to intervene and moved the state court to declare Section 4-107(i) unconstitutional, to order the return of his automobile and to dismiss Doyle's application to sell. Richmond joined in Lampher's motion on the same day.
 
 
 3
 On September 15, 1981, the state trial court upheld the constitutionality of Section 4-107(i) and denied intervenors' motion to dismiss Doyle's suit. Six days later the circuit court found that Lampher's vehicle was contraband and permitted Doyle to sell the car. A similar order was subsequently entered as to Richmond's truck. On September 21, 1981, Lampher filed a motion to vacate the circuit court's judgment on the ground that on July 31, 1981, the Appellate Court of Illinois ruled that Section 4-107(i) was unconstitutional when applied to bona fide purchasers like plaintiffs. People v. One 1979 Pontiac Grand Prix, 98 Ill.App.3d 841, 54 Ill.Dec. 973, 424 N.E.2d 973 (3d Dist.1981).[1] The motion was granted on October 9 and a similar motion by Richmond was granted on October 16. The circuit court ordered the return of plaintiffs' vehicles. As noted, the vehicles were returned to plaintiffs in October 1981. Thereafter plaintiffs returned to the court below in an endeavor to obtain damages and attorney's fees.
 
 
 4
 On October 13, 1983, the district court handed down an order holding that defendants were immune from any liability for damages but were liable to plaintiffs for attorney's fees. In that order District Judge Roszkowski followed the decisions of the Illinois Appellate and Supreme Courts and held that Section 4-107(i) was unconstitutional because of substantive due process violations under the Fourteenth Amendment. In holding defendants liable for attorney's fees, he explained that after the termination of the state trial court proceedings plaintiffs convinced him that the statute in question was unconstitutional. The district court stated that, regardless of the state court proceedings, it "made its own independent judgment that plaintiffs were denied their constitutional rights." The order concluded that plaintiffs were therefore entitled to a reasonable attorney's fee as prevailing parties in the state and federal actions.
 
 
 5
 In a second order, which was filed on December 15, 1983, and allowed attorney's fees to plaintiffs, Judge Roszkowski reiterated that regardless of the state court proceedings, plaintiffs prevailed in their federal court action based on 42 U.S.C. Sec. 1983, and he therefore awarded Lampher's counsel $4,050 and Richmond's counsel $4,537.50 as reasonable attorney's fees.
 
 
 6
 Defendants have asked us to set aside the awards of attorney's fees, although defendant Zagel recognizes that a plaintiff in a civil rights action will be considered a "prevailing party" and entitled to attorney's fees under 42 U.S.C. Sec. 1988 if he has succeeded on a significant issue achieving some benefit to his client (Zagel Br. 16). Section 1988 provides in pertinent part as follows:
 
 
 7
 In any action or proceeding to enforce a provision of Sections 1981, 1982, 1983, 1985 and 1986 * * * of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party * * * a reasonable attorney's fee as part of the costs. (Emphasis supplied.)
 
 
 8
 Only defendant Doyle disputes that plaintiffs were prevailing parties within the meaning of Section 1988 (Doyle Br. 3-6; Doyle Reply Br. 2-3), but both defendants advance the following reasons to show "special circumstances" why the award of attorney's fees was unjust. Thus they state (Zagel Br. 19, adopted in Doyle Br. 7):
 
 
 9
 1. The state court judge initially found the Illinois statute constitutional.
 
 
 10
 2. After the state court ruled that the statute was unconstitutional in view of a decision of the Appellate Court of Illinois, defendants returned the vehicles to plaintiffs with "reasonable dispatch."
 
 
 11
 3. This was not a class action.
 
 
 12
 4. Defendants could not amend the Illinois law and "were simply carrying out the law as it was written."
 
 
 13
 5. Defendants exhibited good faith in carrying out their responsibilities.
 
 
 14
 Defendant Doyle is erroneous in stating that "this change in the law [unconstitutionality of pertinent provision of Illinois Motor Vehicle Act] occurred before the federal lawsuit was heard" (Br. 6). Defendants' motions to abstain were heard by the district judge on June 17, 1981, and granted the next day, but the Illinois statute was not declared unconstitutional by the state trial court until September 15, 1981.
 
 
 15
 On April 23, 1982, a federal magistrate upheld defendants' contention that they were immune from damages but refused to hold that plaintiffs were not entitled to attorney's fees (R. Item 33 at 6, 10). His report was adopted by the federal district judge on July 7, 1982 (R. Item 35).
 
 
 16
 In the Circuit Court of Winnebago County suit brought by defendant Doyle for the State of Illinois, plaintiffs were permitted to intervene and filed motions and briefs and presented oral arguments attacking the constitutionality of Section 4-107(i) of the Illinois Motor Vehicle Act. After the Circuit Court ruled against them on September 15, 1981, the plaintiffs participated in an evidentiary hearing as to the contraband character and possible sale of their automobiles. Their subsequent motions to vacate the Circuit Court's adverse rulings in view of People v. One 1979 Pontiac Grand Prix, supra, were resisted by defendants on the ground that the decision of the Appellate Court of Illinois, Third District, was not binding in the Second District in which Winnebago County lies. The state trial judge refused to accept this argument after considering briefs and oral arguments of plaintiffs' and defendants' counsel. Defendants concede that from June 19, 1981, when plaintiffs intervened in the state case, they and defendants "were continuously engaged in litigation before" the state trial judge until October 1981 (R. Item 46 at 4; R. Item 48 at 3).
 
 
 17
 On March 1, 1983, plaintiff Richmond filed a federal court brief arguing why the state statute was unconstitutional, why 42 U.S.C. Sec. 1983 was violated by defendants and requesting $4,940.50 in damages and $4,350 attorney's fees. On the next day plaintiff Lampher filed a similar brief seeking $4,075 in damages and $4,050 attorney's fees.
 
 
 18
 As noted, on October 13, 1983, the district court held that plaintiffs were entitled under 42 U.S.C. Sec. 1988 to recover reasonable attorney's fees for the time spent in federal and state court. On October 21, Lampher's counsel submitted a detailed fee petition showing the expenditure of 54 hours and that $75 per hour was usual and customary, thus entitling him to $4,050. Four days later, Richmond's counsel submitted a similar petition claiming 60.5 hours at $75 per hour or $4,537.50. Defendants filed objections to the payment of any fees on the ground that plaintiffs did not prevail in federal court and that in any event the court should substantially reduce the fees claimed. However, on December 15, the district judge rejected both arguments and approved the fees sought. In their briefs before us, defendants no longer challenge the amounts of the attorney's fees awarded but instead defendant Doyle argues that plaintiffs were not "prevailing parties" within 42 U.S.C. Sec. 1988; both defendants additionally argue that "special circumstances" invalidate the awards. Nevertheless, we affirm.
 
 
 19
 * Defendant Zagel seemingly concedes that plaintiffs were prevailing parties because they succeeded "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit," quoting from Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, which in turn was quoting with approval from Nadeau v. Heglemoe, 581 F.2d 275, 278-279 (1st Cir.1978) (Zagel Br. 16). See Lummi Indian Tribe v. Oltman, 720 F.2d 1124, 1125 (9th Cir.1983) (plaintiffs ruled prevailing parties under the "generous standard" of Hensley ). This federal suit was filed on May 27, 1981, but rather than permitting the district court to determine the constitutionality of Sec. 4-107(i) of the Illinois Motor Vehicle Code, defendant Doyle filed the state court suit on June 16, 1981, and on the following day successfully sought to have the district judge stay his hand until the state trial judge passed on the identical question. This maneuver, of course, forced the plaintiffs to litigate the matter in the Circuit Court of Winnebago County rather than in their chosen forum. After they won that suit, plaintiffs returned to federal court and litigated the constitutional question anew there, persuading Judge Roszkowski also to hold the statute unconstitutional.
 
 
 20
 The filing of the civil rights action contributed to the relief sought, for it caused defendant Doyle to initiate the state court suit to test the same constitutional question and then to persuade the federal court to abstain pending the decision of the Circuit Court of Winnebago County. If the state suit had not been filed, the prior federal court suit would have been the forum determining the constitutional question. Moreover, the district judge stated that he was persuaded by plaintiffs to adopt the state court's construction of Section 4-107(i) rather than slavishly following that decision. In these circumstances, it simply will not do to try to bifurcate the two lawsuits and say the plaintiffs only prevailed in the state court.
 
 
 21
 New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723, supports the district judge's award of these attorney's fees. There plaintiff Carey was held entitled to attorney's fees for work done in state administrative and judicial proceedings prior to her federal suit seeking attorney's fees as "the prevailing party" under Section 706(k) of Title VII of the Civil Rights Act of 1964 (42 U.S.C. Sec. 2000e-5(k)). Since "the prevailing party" is also the touchstone of 42 U.S.C. Sec. 1988 which similarly refers to "In any action or proceeding" (p. 4 supra ), under New York Gaslight plaintiffs are entitled to the fees in question. As there explained, both the Title VII fee provision and Section 1988 are "legislation similar in purpose and design * * *." 447 U.S. at 71 n. 9, 100 S.Ct. at 2034 n. 9.
 
 
 22
 As in Ciechon v. City of Chicago, 686 F.2d 511, 525 (7th Cir.1982), and Chrapliwy v. Uniroyal, Inc., 670 F.2d 760, 765 (7th Cir.1982), certiorari denied, 461 U.S. 956, 103 S.Ct. 2428, 77 L.Ed.2d 1315, not to provide compensation for counsel here would encourage bypassing state procedures by inhibiting counsel from appearing in state proceedings forced upon federal court litigants by state officials who persuade a federal court to abstain while the same subject matter is being considered in a subsequent state court suit. In the instant suit, if plaintiffs knew they would not be compensated for the hours spent in the case brought in the Circuit Court of Winnebago County, they might well have decided against intervention there.
 
 
 23
 At the oral argument, we were urged not to award any fees for services plaintiffs performed in the state court. A similar situation prevailed in Bartholomew v. Watson, 665 F.2d 910 (9th Cir.1982), where the defendants persuaded the federal district court to abstain pending the outcome of a state court ruling on a new statute. There the Oregon state court ruled in favor of the state, but thereafter the state defendants adopted a rule giving plaintiffs some of the relief they had sought in their federal cause. Relying on the Supreme Court's opinion in New York Gaslight Club, supra, and the legislative history of 42 U.S.C. Sec. 1988, the Ninth Circuit permitted attorney's fees to be awarded to plaintiffs for services performed by their counsel in the Oregon court. In explaining its decision, the court of appeals stated that its result would further cooperation between state and federal courts in the protection of federal constitutional rights and that otherwise serious strains between the state and federal court systems might develop and encourage forum shopping and "interfere with the efficient allocation of issues and cases between the state and federal systems." 665 F.2d at 913.[2] Since the circumstances in Bartholomew were virtually identical to those before us, the opinion in that case is especially persuasive. Moreover, the First Circuit also allowed attorney's fees recently on facts similar to this case. In Stathos v. Bowden, 728 F.2d 15, 22 (1st Cir.1984), plaintiffs were required to defend a state declaratory judgment action which was brought by federal defendants immediately after they learned of plaintiffs' federal suit against them. The Court, citing Bartholomew and our Chrapliwy decision, awarded plaintiffs attorney's fees arising from the state court action because defense of said action "was a necessary part of plaintiffs' efforts to achieve their Sec. 1983 goal." Id. at 22. We are persuaded by our prior precedent and the reasoning of the First and Ninth Circuits that the district court's decision was correct.
 
 
 24
 Defendant Doyle cites only two cases in his effort to defeat the district court's fee decision: American Constitutional Party v. Munro, 650 F.2d 184 (9th Cir.1981), and Bonnes v. Long, 599 F.2d 1316, 1318 (4th Cir.1979), certiorari denied, 455 U.S. 961, 102 S.Ct. 1476, 71 L.Ed.2d 681. However, the Bonnes court determined that plaintiffs there could recover attorney's fees as prevailing parties under 42 U.S.C. Sec. 1988 even though the consent decree benefited both parties because, as here, "enforcement of civil rights legislation can best be achieved by encouraging the public to act as private attorneys general." The Bonnes test for determining who is a "prevailing party" was satisfied here since these fee claimants obtained a legal position (both in state and federal court) that gained them a benefit and relieved them of a burden. 599 F.2d at 1319. Moreover, their efforts in both tribunals contributed to the favorable outcome in a significant way. Ibid. Under Bonnes these plaintiffs were clearly prevailing parties.
 
 
 25
 In the American Constitutional Party case, defendant Doyle's only other authority, Judge Eugene Wright's opinion recognized that a plaintiff may recover attorney's fees under 42 U.S.C. Sec. 1988 even if he "does not obtain formal relief" or "does not prevail on all issues." 650 F.2d at 187. He also wrote that a plaintiff is entitled to fees if, as here, his "lawsuit 'acted as a catalyst which prompted the appellee [defendants here] to take action'." After pointing out the "generous attitude toward the award of fees" mandated by Congress in Section 1988, relief was denied because, unlike the present situation, the plaintiffs before the Ninth Circuit were unable to show any causal relationship between their litigation and a statutory amendment whose genesis had occurred in earlier years. 650 F.2d at 188. Here, as seen, plaintiffs' efforts in state and federal court did achieve their objective.
 
 
 26
 As an aid to the enforcement of 42 U.S.C. Sec. 1983, we hold that 42 U.S.C. Sec. 1988 authorized the assessment of attorney's fees against these defendants to be paid by the State of Illinois regardless of defendants' personal immunity. Hutto v. Finney, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522.
 
 II
 
 27
 Both defendants contend that "special circumstances" preclude the award of attorney's fees to plaintiffs under the Civil Rights Act of 1964. This judicial exception to the recovery of fees by the prevailing party apparently originated in 1968 in the per curiam opinion in Newman v. Piggy Park Enterprises, Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263; see Supreme Court of Virginia v. Consumers Union, 446 U.S. 719, n. 17, 737-738, 100 S.Ct. 1967, n. 17, 1977.
 
 
 28
 Defendants have relied on five factors (Zagel Br. 19) to show special circumstances here. See supra, p. 4. Perhaps their major emphasis is upon good faith enforcement of Section 4-107(i) of the Illinois Motor Vehicle Act which they considered valid. However, these factors are not special circumstances that would support the denial of these fees. Riddell v. National Democratic Party, 624 F.2d 539, 545 (5th Cir.1980); Johnson v. State of Mississippi, 606 F.2d 635, 637 (5th Cir.1979). Even after the Appellate Court of Illinois invalidated the statute, defendants continued to urge its constitutionality and to hold the automobiles for the next two months, hardly a badge of good faith. In any event, as we observed in Harrington v. DeVito, 656 F.2d 264, 268 (7th Cir.1981), "the good faith of the defendant[s] is irrelevant because 'the key issue is the provocative role of the plaintiffs' lawsuit, not the motivation of the defendant' " (quoting Nadeau v. Heglemoe, 581 F.2d 275, 280 (1st Cir.1980)) and, as here, "the defendant must not have acted wholly gratuitously" but in response to a plaintiff's claim. 656 F.2d at 266.[3]
 
 
 29
 To support their special circumstances concept, plaintiffs rely on three cases: Bonnes v. Long, supra, Chastang v. Flynn & Emrich Co., 541 F.2d 1040 (4th Cir.1976), and Bush v. Bays, 463 F.Supp. 59 (E.D.Va.1978).
 
 
 30
 In Bonnes, the Fourth Circuit adhered to its earlier ruling in Chastang that special circumstances barring fee recovery would exist if the discriminatory nature of a profit-sharing and retirement plan were cured by defendants before plaintiffs filed the litigation. 599 F.2d at 1318.[4] Here defendants did not act favorably to plaintiffs until three months after plaintiffs filed their suit causing defendants' capitulation.
 
 
 31
 In Chastang, special circumstances existed for the denial of attorney's fees because the defendant obviated the discrimination in its retirement plan on December 8, 1970, and plaintiffs' suits were not filed until June 2, 1971. 541 F.2d at 1045.
 
 
 32
 In Bush v. Bays, 463 F.Supp. 59, 66 (E.D.Va.1978), plaintiffs were denied attorney's fees under 42 U.S.C. Sec. 1988 because they were not prevailing parties. The court added dicta in terms of Chastang finding special circumstances in that unlike the present plaintiffs, the Bush "plaintiffs' lawsuit was not a contributing factor to any of defendants' [significant] actions" and unlike Doyle and Zagel the defendants there acted with reasonable dispatch after learning of two adverse decisions. In contrast Doyle and Zagel resisted the adverse decision of the Appellate Court, Third District, in One 1979 Pontiac Grand Prix. The Bush defendants "acted at all times in a manner consistent with their professed desire to distribute the maximum amount of food stamps coupons to every eligible applicant as quickly as possible" (463 F.Supp. at 66-67), while Doyle and Zagel continued to resist plaintiffs until they were unsuccessful in opposing the state trial court's vacating its first opinion in their favor.
 
 
 33
 Special circumstances favor the plaintiffs, not the defendants. Payment of the attorney's fees will encourage plaintiffs acting for themselves but also as private attorneys general to advance the public interest in the eradication of this unconstitutional provision of the Illinois Motor Vehicle Act in addition to penalizing litigants who continued to advance constitutional arguments after they were rejected by the Appellate Court of Illinois. Plaintiffs' victory was in the public interest by eliminating unconstitutional legislation even though this was not a class action. Moreover, our affirmance of the district court's decision will not hurt individuals of modest means, for payment will admittedly come out of public funds (Zagel Reply Br. 5). In addition, the filing and prosecution of this federal action did contribute to the return of plaintiffs' automobiles, the very relief sought. In sum, special circumstances here operate to make the award of attorney's fees just, not unjust as defendants submit.
 
 
 34
 For the foregoing reasons, the district court's December 15, 1983, order assessing attorney's fees against defendants is affirmed.
 
 
 
 [1]
 This decision was affirmed by the Illinois Supreme Court in People v. One 1979 Pontiac Grand Prix, 89 Ill.2d 506, 60 Ill.Dec. 934, 433 N.E.2d 1301 (1982)
 
 
 [2]
 See also Brown v. Bathke, 588 F.2d 634, 638 (8th Cir.1978), but cf. Webb v. County Bd. of Educ. of Dyer County, Tenn., 715 F.2d 254 (6th Cir.1983) (attorney's fees for services rendered in optional state administrative proceedings not available)
 
 
 [3]
 Other cases in which we have refused to find special circumstances include Lenard v. Argento, 699 F.2d 874 (1983), and Entertainment Concepts, Inc. III v. Maciejewski, 631 F.2d 497 (1980)
 
 
 [4]
 In Bonnes, the case was remanded to the district court to determine whether plaintiffs were prevailing parties and if so whether special circumstances barred the award of attorney's fees. 599 F.2d at 1319