BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE MICHAEL J. MACHADO, MEMBER OF THE STATE SENATE, has requested an opinion on the following question:
May a financial institution that issues credit cards charge a cardholder a service fee when it creates a demand draft for presentation to the cardholder's bank for payment of a current or past due credit card obligation if charging the fee is authorized in the credit card agreement?
 CONCLUSION
A financial institution that issues credit cards may charge a cardholder a service fee when it creates a demand draft for presentation to the cardholder's bank for payment of a current or past due credit card obligation if charging the fee is authorized in the credit card agreement.
 ANALYSIS
The question presented for analysis concerns an arrangement whereby a financial institution that issues credit cards ("creditor") is given permission by a cardholder to create a "demand draft" for presentation to the cardholder's bank to pay a current or past due credit card obligation. The credit card agreement may describe the procedure as follows:
"From time to time we may permit you to make a payment over the telephone by authorizing a transfer of funds from a deposit account that you designate to us in order to make a payment on your account (Telephone Payment). A FINANCE CHARGE of $5.00 may be imposed for each Telephone Payment."
Another example of a "telephone payment" authorization would be:
"Pay-by-Phone Fee: We may from time to time allow you to make payments by authorizing us over the telephone to transfer funds from a deposit account to your Account. We will charge a Pay-by-Phone Fee of $5.00 for each such transfer, if permitted by applicable law."
A telephone payment allows the cardholder to avoid interest charges and late fees, as well as "late payment" reports to credit rating bureaus. In addition, an increase in the interest rate may be avoided on some accounts if the payment is timely. A cardholder may accept or reject the procedure; possible alternatives would include paying for expedited mail delivery by the United States Postal Service or instituting a "wire transfer" or other means of immediate payment by the cardholder's bank. We are informed that a creditor is charged a fee by the cardholder's bank when arranging telephone payments.
Does any law, state or federal, prohibit a creditor from charging a fee for a telephone payment if charging the fee is authorized in the credit card agreement? We conclude that charging a fee in the circumstances presented would not be prohibited by law.
Debt collection practices in California are governed by the state Rosenthal Fair Debt Collection Practices Act (Civil Code §§ 17881788.32; "Act")[1] and the federal Fair Debt Collection Practices Act (15 U.S.C. § 1692-1692o). The Act makes applicable, with few exceptions, the debt collection standards and remedies of the federal law to all parties defined as debt collectors under the Act. (§1788.17.) The Act also applies the state's own standards to debt collectors. (§§ 1788.10-1788.16.) Section 1788.2
provides the relevant definitions for application of the Act:
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"(b) The term `debt collection' means any act or practice in connection with the collection of consumer debts.
"(c) The term `debt collector' means any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection. . . .
"(d) The term `debt' means money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person.
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"(f) The terms `consumer debt' and `consumer credit' mean money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction.
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"(h) The term `debtor' means a natural person from whom a debt collector seeks to collect a consumer debt which is due and owing or alleged to be due and owing from such person.
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
The federal law has similar definitional provisions which state in relevant part:
"The term `debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . [T] he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. . . . The term does not include —
"(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."15 U.S.C. § 1692a(6).)
Here, we may assume that the financial institution is not using a different name in setting up the telephone payment procedure and is not attempting to collect anything on behalf of someone else. The federal law is thus inapplicable in the described circumstances. (Lewis v. ACB Business Services, Inc. (6th Cir. 1998) 135 F.3d 389.)
The first issue to be addressed with respect to the Act concerns when a debt is "due and owing."[2] These terms have not been defined in the Act and may have different meanings depending upon their context. "Due" generally means "having reached the date at which payment is required" (Webster's 3d New Internat. Dict. (1971) p. 699) or "[i]mmediately enforceable" (Black's Law Dict. (7th ed. 1999) p. 515, col. 2). "Owing" generally means "due to be paid" (Webster's, supra, at p. 1613) or "[t]hat is yet to be paid" or "owed" (Black's, supra, at p. 1130, col. 2).
We have examined the statutory history of the Act's provisions in some detail. (Stats. 2000, chs. 688, 375; Stats. 1999, ch. 319; Stats. 1994, ch. 1010; Stats. 1980, ch. 1126; Stats. 1978, ch. 390; Stats. 1977, ch. 907.) The legislative purposes appear to be focused entirely upon debts that have become delinquent and subject to immediate collection activities. This construction of the phrase "due and owing" would have the effect of conforming the Act's provisions to federal law. (See Bailey v. Security National Servicing Corp. (7th Cir. 1998) 154 F.3d 384,386-389; Whitaker v. Ameritech Corp. (7th Cir. 1997) 129 F.3d 952,958-959; Newman v. Boehm, Pearlstein Bright, Ltd. (7th Cir. 1997)119 F.3d 477, 481-482.)
Accordingly, the Act applies to debts that have become delinquent, making them subject to collection. In contrast, credit card obligations that are "current," prior to becoming delinquent and before the date at which payment is required, are not subject to the Act's requirements.
As to credit card obligations that are past due, we note that the purposes of the Act are "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts. . . ." (§ 1788.1, subd. (b).) Section 1788.14 states that certain practices are expressly prohibited:
"No debt collector shall collect or attempt to collect a consumer debt by means of the following practices:
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"(b) Collecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law. . . .
". . . . . . . . . . . . . . . . . . . . . . . . . . . . .
A similar provision is contained in the federal law and has been incorporated into the Act by section 1788.17. The federal statute provides:
"A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
"(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . ." (15 U.S.C. § 1692f(1).)[3]
Federal law thus allows the collection of a fee by a creditor if "such amount is expressly authorized by the agreement creating the debt. . . ." (15 U.S.C. § 1692f(1).) Consequently, federal law would not bar collection of a fee to create a demand draft if the fee is specified in the credit card agreement. (See Patterson v. North Shore Agency, Inc. (N.D.Ill. 2000) 126 F. Supp.2d 1138, 1139-1140.)
The terms of the Act do not contain a like provision concerning fees that are expressly authorized by the agreement creating the debt. However, as previously mentioned, section 1788.17 incorporates the federal law quoted above. Section 1788.17 states:
"Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of . . . Title 15 of the United States Code. . . ."
Hence, a creditor is prohibited by federal law from charging a fee that is not "expressly authorized by the agreement creating the debt or permitted by law." (15 U.S.C. § 1692f(l).) Charging a fee that is expressly authorized by the credit card agreement would be in compliance with the federal law and therefore permissible under the terms of section 1788.7 "[n]otwithstanding any other provision of [the Act]," including the prohibition of section 1788.14, subdivision (b). The phrase " notwithstanding other provisions of law" expresses the "legislative intent to have the specific statute control despite the existence of other law which might otherwise govern. [Citations.]" (People v. DeLaCruz (1993) 20 Cal.App.4th 955, 963.)
Our construction of the Act's provisions provides consistency with the related provisions of federal law. Charging a fee for a special payment option that may benefit the cardholder, where the fee is set forth in the credit card agreement and the cardholder is free to choose or reject the option, would not come within the provisions of the Act or its federal counterpart which are directed at "unfair or deceptive" collection practices, particularly where the fee covers an additional cost incurred by the creditor.
No other law, state or federal, appears relevant to our inquiry.[4]
We thus conclude that a financial institution that issues credit cards may charge a cardholder a service fee when it creates a demand draft for presentation to the cardholder's bank for payment of a current or past due credit obligation if charging the fee is authorized in the credit card agreement.
[1] All further statutory references are to the Civil Code unless otherwise indicated.
[2] Although the Act's definitions specify both "due or owing" and "due and owing," we do not distinguish between the two phrases. Unless the debt is due and owing, there is no debtor to which the Act would apply.
[3] Examples of fees "permitted by law" would be those associated with dishonored checks. (See, e.g., §§ 1719, 1810.4.)
[4] Under the Unruh Act (§§ 1801-1812.20), the holder of a retail installment account may not charge certain fees (§ 1810.4), but this statutory scheme is inapplicable to financial institutions issuing credit cards under the circumstances presented herein (§1801.6, subd. (b)).